UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DEBORAH ANN HOWDESHELL,

      Plaintiff,

v.                             Case No.:  2:20-cv-514-SPC-MRM

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Deborah Howdeshell filed a Complaint on July 18, 2020.  (Doc. 1).
Plaintiff seeks judicial review of the final decision of the Commissioner of the Social
Security Administration ("SSA") denying her claim for a period of disability and
disability insurance benefits.  The Commissioner filed an initial transcript of the
administrative proceedings and a supplemental transcript, (Docs. 13, 14),[1] and the
parties filed a joint memorandum detailing their respective positions, (Doc. 16).  For
the reasons set forth herein, the Undersigned recommends that the decision of the
Commissioner be **REVERSED AND REMANDED** pursuant to § 205(g) of the
Social Security Act, 42 U.S.C. § 405(g).

---

[1]  Hereinafter, the Undersigned refers to both the transcript (Doc. 13) and
supplemental transcript (Doc. 14) as "Tr." followed by the appropriate page number.

## I.       Social Security Act Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.  The impairment must be severe, making the claimant unable to do her previous work or any other substantial gainful activity that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911.

## II.      Procedural History

Plaintiff applied for a period of disability and disability insurance benefits on October 13, 2016, alleging a disability onset date of January 15, 2016.  (Tr. at 10).[2] Plaintiff's claim was initially denied on November 4, 2016, and again upon reconsideration on February 3, 2017.  (*Id.*).  On February 23, 2017, Plaintiff filed a written request for hearing.  (*Id.*).  An initial videoconference hearing was held on February 25, 2019, before Administrative Law Judge ("ALJ") Thomas Merrill, (*id.* at 32-40), and a supplemental video-conference hearing was held on September 24, 2019, before ALJ Merrill, (*id.* at 1174-1221).  The ALJ issued an unfavorable

---

[2]  The SSA revised the rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017.  *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844 (Jan. 18, 2017).  The new regulations do not apply in Plaintiff's case because Plaintiff filed her claim before March 27, 2017.

decision on October 2, 2019.  (*Id.* at 7-20).  The Appeals Council subsequently denied Plaintiff's request for review on May 28, 2020.  (*Id.* at 1-3).  Plaintiff filed her Complaint in this Court on July 18, 2020.  (Doc. 1).  The case is ripe for review.

## III.      Summary of the Administrative Law Judge's Decision

An ALJ must follow a five-step sequential evaluation process to determine whether a claimant has proven she is disabled.  *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).  An ALJ must determine whether the claimant:  (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform her past relevant work; and (5) can perform other work of the sort found in the national economy.  *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004).  The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five.  *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2021.  (Tr. at 12).  At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 15, 2016.  (*Id.*).  At step two, the ALJ found that Plaintiff has the following severe impairments:  "osteoarthritis of the feet with intermittent tendonitis/plantar fasciitis, inflammatory/rheumatoid arthritis and diabetes mellitus

(20 [C.F.R. §] 404.1520(c))." (*Id.*). The ALJ, at step three, determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R. §] Part 404, Subpart P, Appendix 1 (20 [C.F.R. §§] 404.1520(d), 404.1525, and 404.1526)." (*Id.* at 15).

At step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to:

> perform light work as defined in 20 [C.F.R. §] 404.1567(b) except that she is limited from standing/walk [sic] 6 hours in combination during an 8-hour workday and sit for 8 hours in an 8-hour workday. She can repetitively use her feet to operate foot controls. She can repetitively reach overhead with her upper extremities and has no manipulative limitation. She [can] frequently bend, squat, crawl, and climb.

(*Id.* at 16). The ALJ also determined that Plaintiff "is capable of performing past relevant work as a medical records clerk and bookkeeper. This work does not require the performance of work-related activities precluded by [Plaintiff's RFC] (20 [C.F.R. §] 404.1565)." (*Id.* at 19). Accordingly, the ALJ found that "[t]he claimant has not been under a disability, as defined in the Social Security Act, from January 15, 2016, through the date of this decision (20 [C.F.R. §] 404.1520(f))." (*Id.* at 20).

IV.    **Standard of Review**

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

**V.**      **Analysis**

On appeal, Plaintiff raises three issues.  As stated by the parties, the issues are:

1.      Whether remand is required because the ALJ violated Agency policy by having the medical expert testify at the beginning of the administrative hearing, without hearing Ms. Howdeshell's testimony or an ALJ summary of such testimony;

2.      Whether the ALJ made reversible legal errors in evaluating Ms. Howdeshell's past relevant work; and

3.      Whether the ALJ properly evaluated the severity of Ms. Howdeshell's impairments.

(Doc. 16 at 6, 14, 18).  The Undersigned finds that remand is required under the first and third issues.  Accordingly, the Undersigned addresses below the first and third issues in that order.

**A.      Whether Remand Is Required for the ALJ's Failure to Properly Comply with HALLEX I-2-6-70(b).**

The ALJ held an initial videoconference hearing on February 25, 2019, (Tr. at 32-40), and a supplemental video-conference hearing on September 24, 2019, (*id.* at 1174-1221).  Plaintiff first argues that the ALJ violated SSA policy at the September 24, 2019 hearing by allowing medical expert Allan Duby, M.D. to testify without the benefit of either Plaintiff's testimony or the ALJ's summary of Plaintiff's testimony, as required by HALLEX I-2-6-70(b).  (*Id.* at 7-8 (citations omitted)).  Plaintiff specifically highlights that while the ALJ could not have summarized Plaintiff's September 24, 2019 testimony – because Plaintiff had not yet given it – the ALJ could have summarized Plaintiff's February 25, 2019 testimony during the initial videoconference hearing.  (*Id.* at 7).

Plaintiff argues that SSR 13-2p clarifies that the HALLEX has the force of law. (*Id.* at 8 (citing SSR 13-2p 2013 WL 621536, at *15)).  Additionally, Plaintiff contends that HALLEX I-2-6-70(b) "is designed to ensure that a medical expert's testimony is based on the entirety of the evidence of record." (*Id.*).  Plaintiff points out that Dr. Duby testified without hearing or receiving a summary of either Plaintiff's February 2019 or September 2019 testimony. (*Id.* at 8-9).  Plaintiff maintains that because Dr. Duby testified "without the benefit of hearing the claimant's testimony or a summary of such testimony, . . . the ALJ relied upon the incomplete opinion of Dr. Duby in formulating his [RFC]." (*Id.* at 9).  As such, Plaintiff argues remand is warranted. (*Id.*).

In response, Defendant argues that "even fully accepting Plaintiff's arguments at face value, any error the ALJ may have committed in eliciting Dr. Duby's testimony was at most harmless because the ALJ assigned Dr. Duby's opinion little weight and did not rely on his opinion in forming Plaintiff's [RFC]." (*Id.* at 9-10 (citations omitted)).  In support, Defendant highlights that the ALJ relied on Plaintiff's treating physician's opinion, "Plaintiff's relatively mild objective medical evidence, and Plaintiff's daily activities to find that Plaintiff could perform a reduced range of light work." (*Id.* at 10 (citing Tr. at 16-19)).  Defendant maintains that in so doing, the ALJ properly assigned Dr. Duby's opinion little weight, finding it inconsistent with the medical evidence. (*Id.* (citing Tr. at 18-19)).  Defendant highlights that Plaintiff makes no argument that the ALJ made any error in assessing the RFC or determining the weight that Dr. Duby's opinion is entitled to. (*Id.* at 10-

11).  Thus, Defendant contends that even if the Court credits Plaintiff's first argument, any error by the ALJ is harmless and remand is not warranted.  (*Id.*).

Moreover, Defendant maintains that Plaintiff's argument fails on its merits because "Plaintiff failed to show that the HALLEX has the force of law or is binding on the Commissioner or that any alleged noncompliance with the HALLEX is subject to judicial review."  (*Id.* at 11-12).  To that end, Defendant contends that Eleventh Circuit case law "provides persuasive authority for why the HALLEX cannot provide a basis for remand in Plaintiff's case."  (*Id.* at 11-12 (citations omitted)).  Likewise, Defendant highlights that "other circuit courts have concluded either that the HALLEX creates no legally enforceable rights and any alleged noncompliance is not subject to judicial review, or that the claimant must show prejudice due to noncompliance with the HALLEX to obtain remand."  (*Id.* at 12 (internal citations omitted)).

To that end, Defendant maintains that here Plaintiff has failed to show that she was prejudiced by any noncompliance with the HALLEX.  (*Id.*).  In support, Defendant highlights that "Dr. Duby testified at length regarding Plaintiff's medications, had reviewed Plaintiff's most recent treatment records, and even directly questioned Plaintiff regarding updates in her weight since her last examination."  (*Id.* at 12-13 (citing Tr. at 1178-1201)).  Defendant, therefore, argues that "Dr. Duby had access to all of the information that HALLEX I-2-6-70(b) contemplates."  (*Id.* at 13).

Finally, Defendant argues that Plaintiff's reliance on SSR 13-2p is misplaced because SSR 13-2p addresses how the Commissioner evaluates cases involving drug addiction and alcoholism.  (*Id.*).  Nevertheless, Defendant maintains that SSR 13-2p "does not change the fact that HALLEX is a manual, not a regulation" or that "HALLEX was not issued using notice and comment rulemaking procedures."  (*Id.*).

In sum, Defendant asserts that Plaintiff's argument is meritless because (1) "the ALJ did not rely on Dr. Duby's opinion and any error in eliciting that opinion was harmless at most;" (2) "the source Plaintiff relies on, HALLEX, does not carry the force of law and cannot serve as a basis for a remand;" and (3) "even if the HALLEX did carry the force of law, Plaintiff failed to show any prejudice."  (*Id.* at 13-14).

As an initial matter, HALLEX 1-2-6-70(b) addresses the use of a medical expert in Social Security hearings and states, in pertinent part:

> The [medical expert] may attend the entire hearing, but this is not required.  If the [medical expert] was not present to hear pertinent testimony, such as testimony regarding the claimant's current medications or sources and types of treatment, the ALJ will summarize the testimony for the [medical expert] on the record.  If additional medical evidence is received at the hearing, the ALJ will provide it to the [medical expert] for review before the [medical expert] testifies.

HALLEX I-2-6-70(b).

Importantly, the Eleventh Circuit has not decided whether the HALLEX carries the force of law.  *See McCabe v. Comm'r of Soc. Sec.*, 661 F. App'x 596, 599 (11th Cir. 2016).  Additionally, there is a split among the circuits as to whether the

HALLEX is judicially enforceable.  *Compare, e.g.*, *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 859 (3d Cir. 2007) (finding that the HALLEX is not judicially enforceable), *with Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000) (finding that the HALLEX is judicially enforceable if prejudice is shown).  Additionally, some trial courts within the Eleventh Circuit have found that if the HALLEX does create judicially enforceable rights, remand is only required when the plaintiff shows that (1) the ALJ violated a procedure in the HALLEX and (2) the violation prejudices the plaintiff.  *See Warren v. Astrue*, 830 F. Supp. 2d 1369, 1372 (S.D. Fla. 2011); *Weber v. Comm'r of Soc. Sec.*, No. 2:16-cv-25-FtM-CM, 2017 WL 727765, at *3 (M.D. Fla. Feb. 24, 2017).  The Eleventh Circuit has suggested the same.  *See Carroll v. Comm'r of Soc. Sec.*, 453 F. App'x 889, 892-93 (11th Cir. 2011) (finding that the agency's violation of its own governing rules must result in prejudice to support remand for agency noncompliance).  Without binding authority on the issue, the Undersigned is persuaded by the courts that find that HALLEX is judicially enforceable, but that prejudice to the plaintiff must be shown to warrant remand.  *See Weber*, 2017 WL 727765, at *3.[3]

---

[3]  To the extent Plaintiff attempts to argue that the HALLEX has been given the force of law by SSR 13-2p, (*see* Doc. 16 at 8), the Undersigned finds Plaintiff's reliance on SSR 13-2p misplaced.  SSR 13-2p explicitly states that it relates to "evaluating cases involving drug addiction and alcoholism."  SSR 13-2p, 2013 WL 621536.  Here, there is nothing in the record indicating that Plaintiff suffered from drug addiction and alcoholism, such that SSR 13-2p applied to her claim.  Nevertheless, because the Undersigned finds the HALLEX judicially enforceable, Plaintiff's misplaced reliance does not affect the resolution of this issue.

At the first hearing, the ALJ noted that he had only one opinion from the agency and that the opinion was over two years old.  (Tr. at 36).  Additionally, the ALJ highlighted that the prior opinion relied on only "six F exhibits" whereas the record now contains "22 F exhibits," including additional imaging studies from December 2018.  (*Id.*).  As a result, the ALJ determined that he needed a medical expert "to evaluate the x-rays [contained in the F exhibits] to determine what functional limitations [Plaintiff has] based upon the x-rays."  (*Id.* at 36-37). Importantly, although it is unclear to which opinion from the agency the ALJ refers, (*see id*. at 36; *see also id.* at 41-49, 52-63), the exhibits associated with Plaintiff's visits in which she complained of her hands were not before either state agency reviewer, (*see, e.g.*, *id.* at 595, 633, 837, 847, 870).  Thus, the Undersigned finds that implicit in the ALJ's statement is that he needed a medical expert to help determine Plaintiff's limitations, including those limitations allegedly caused by her hand impairments. (*See id.* at 36-37).

However, during the hearing, Dr. Duby testified without listening to Plaintiff's testimony or receiving a summary of Plaintiff's prior testimony.  (*See id.* at 1177-1200).[4]  Thus, Dr. Duby's testimony directly violated HALLEX I-2-6-70(b).  Because the ALJ indisputably violated HALLEX I-2-6-70(b), the Undersigned must consider whether Plaintiff was prejudiced by the violation.  *See e.g.*, *Warren*, 830 F. Supp. 2d at

---

[4]  Although Dr. Duby asked Plaintiff a few questions, (*see* Tr. at 1178-79), the questions were unrelated to her symptoms in her hand and neither party argue that this testimony satisfies HALLEX I-2-6-70(b).

1372.  Plaintiff does not explicitly address whether she was prejudiced by the ALJ's failure, arguing instead that remand is required for the violation itself.  (*See* Doc. 16 at 7-9).  Upon review of the record, the Undersigned finds that remand is required. In his testimony, Dr. Duby found specific hand limitations:

> With both of her hands [Plaintiff] can reach overhead frequently.  With both of her hands she can reach all other continuously.  With both of her hands she can push and pull frequently.  With both of her hands she can handle, finger, and feel frequently.

(Tr. at 1181).  When questioned, Dr. Duby clarified that his determination to impose these limitations is based on two doctor's visits for this impairment in 2016 and three in 2017.  (*Id*. at 1186, 1188, 1190).  Additionally, Dr. Duby refused to speculate as to the condition of Plaintiff's hands after 2017 because there was no documentation in the record.  (*Id.* at 1185-87).  When further questioned as to the condition of Plaintiff's hands after 2017, Dr. Duby noted that "it's possible [Plaintiff's] hands are the same, it's possible her hands are worse, and it's possible her hands are better, or it's possible that she has no symptoms in her hands.  There's just no documentation, Counsel.  It's not my job to guess, it's my job to tell the Judge and the Court what's in the record."  (*Id*. at 1187; *see also id.* at 1188-89).  In essence, Dr. Duby testified that because there was nothing in the record, he "suspect[s]" Plaintiff's hands improved, but Dr. Duby acknowledged that his statements regarding Plaintiff's hands could be "completely incorrect."  (*Id.* at 1189).

  After Dr. Duby's testimony, Plaintiff testified as to the pain in her hands.  (*See id.* at 1203-05, 1208, 1212).  Specifically, Plaintiff testified that:  (1) the arthritis in her

hands is one of the things preventing her from working, (*id.* at 1203); (2) she has trouble holding a pan with one hand, (*id.* at 1203-04); (3) she can only hold a pan with both hands for about ten to fifteen minutes before needing to rest and that some days she cannot do it at all, (*id.* at 1204); (4) while her right is worse than the left, both hands are swollen, (*id.*); (5) she cannot open jars and that she cannot repetitively use buttons or zippers, (*id.* at 1205); (6) she has some neuropathy in her hands, (*id.* at 1208); and (7) she "always feels the aches and pain in [her] hands. Sometimes it does seem to be a little worse, but it never goes away," (*id.* at 1212). In sum, Plaintiff testified as to her current hand symptoms, (*id.* at 1203-05, 1208, 1212), a fact about which Dr. Duby consistently maintained he was uninformed, (*see id.* at 1187, 1188-89).

Had Dr. Duby had the benefit of hearing Plaintiff's current complaints, his opinion may have changed. That is to say, a distinct possibility remains had that the ALJ complied with HALLEX I-2-6-70(b) and required Dr. Duby to either listen to Plaintiff's testimony or otherwise summarized her testimony, Dr. Duby may have supported his opined limitations with Plaintiff's current symptoms and/or imposed additional limitations. Yet, without the benefit of Plaintiff's testimony, Dr. Duby testified that he was left with only his ability to assume Plaintiff's current symptoms and, without more evidence, "suspect[ed]" her symptoms had improved. (*See id.* at 1189). Such a speculative assumption is clearly prejudicial to Plaintiff, who alleges,

*inter alia*, that her hands hurt daily and limit her ability to do daily activities.  (*See, e.g.*, *id.* at 1203-05, 1212).

The prejudicial nature of this error is further bolstered by the ALJ's written decision.  Specifically, the ALJ gave no weight to Dr. Duby's proposed limitations on the use of the upper extremities and instead relied on Dr. Tribulani's opinion.  (*Id.* at 19).  In support, the ALJ specifically highlighted that Plaintiff has not complained of her hands since November 2017, and that the two complaints in 2016 and three complaints in 2017 do not support the conclusion that her hand impairments are a severe impairment.  (*Id.*).  Additionally, the ALJ acknowledged that Dr. Duby testified to the same.  (*Id.*).  Yet, as addressed above, if Dr. Duby had the benefit of Plaintiff's testimony, he may have supported his opined limitations with Plaintiff's current symptoms.  Moreover, had Dr. Duby supported his findings by more than Plaintiff's five complaints in 2016 and 2017, the ALJ may have credited his limitations and included them in Plaintiff's RFC.

In light of the foregoing, the Undersigned is not persuaded by Defendant's argument that Plaintiff suffered no prejudice because Dr. Duby's opinion was given no weight.  (*See* Doc. 16 at 9-10 (citing Tr. at 19)).  Rather, the Undersigned finds that the ALJ's proffered reasons for giving Dr. Duby's opinion no weight are precisely the basis for a finding of prejudice to Plaintiff.

Additionally, the error is not harmless.  Although the VE testified that a person with three of the four limitations imposed by Dr. Duby could perform Plaintiff's past relevant work, the hypothetical did not encompass all of the upper

extremity limitations imposed by Dr. Duby. (*Compare* Tr. at 1215, *with* Tr. at 1181). Thus, the VE's testimony cannot provide substantial evidence to support a finding that even if Dr. Duby's limitations were imposed, Plaintiff could still perform her past relevant work. Moreover, because Dr. Duby's limitations were imposed based on the evidence of record without the benefit of Plaintiff's testimony as to her current symptoms, a distinct possibility remains that Dr. Duby would have imposed greater limitations. In light of this, the prejudicial error that occurred here by failing to comply with the HALLEX cannot be characterized as harmless.

Likewise, the Undersigned finds Defendant's argument that Dr. Duby had the information required by the HALLEX at his disposal unavailing. (*See* Doc. 16 at 13). While HALLEX I-2-6-70(b) explicitly enumerates "testimony regarding the claimant's current medications or sources and types of treatment," it does not suggest that a medical expert should not hear other testimony. *See* HALLEX I-2-6-70(b). Rather, HALLEX I-2-6-70(b)'s use of the phrase "such as" suggests that additional testimony – such as testimony regarding a claimant's symptoms – may also be pertinent to a medical expert's testimony.

In sum, upon review of the hearing transcript coupled with the reasons the ALJ gave for affording this portion of Dr. Duby's opinion no weight, it is clear that Plaintiff was prejudiced by the ALJ's failure to follow HALLEX I-2-6-70(b). This prejudice requires remand. *See Warren*, 830 F. Supp. 2d at 1372; *Weber*, 2017 WL 727765, at *3.

### B.      Whether the ALJ Properly Evaluated the Severity
of Plaintiff's Impairments.

Plaintiff essentially contends that the ALJ erred in his step two findings.  (*See* Doc. 16 at 18-19).  To that end, Plaintiff essentially proffers five distinct arguments as to how the ALJ erred in assessing various alleged impairments.  (*See id.* at 18-26).

First, Plaintiff argues that the ALJ erred in finding that her hand impairments were not severe because they did not meet the twelve-month durational requirement.  (*Id.* at 19 (citing Tr. at 14)).  In support, Plaintiff argues that the ALJ erred in relying on the opinion of Alphonse Tribuiani, D.P.M. rather than the opinion of the medical expert, Dr. Duby.  (*See id.* at 19-20).  More particularly, Plaintiff asserts that as a podiatrist, Dr. Tribuiani was not an acceptable medical source with respect to Plaintiff's hands, whereas Dr. Duby – as a rheumatologist and specialist in internal medicine – is an acceptable medical source.  (*See id.*).  Further, Plaintiff highlights that Dr. Tribuiani was not familiar with any of Plaintiff's impairments apart from her foot impairments.  (*Id.* at 20).  Additionally, Plaintiff contends that although the ALJ emphasized that she only reported problems with her hands twice in 2016 and three times in 2017, her hand impairments lasted from April 2016 through November 2017, beyond the twelve-month requirement.  (*Id.* at 20-21 (citations omitted)).

Second, Plaintiff argues that the ALJ erred in failing to evaluate the severity of her gastrointestinal ("GI") impairments.  (*Id.* at 21 (citing Tr. at 12-15)).  Plaintiff asserts that she testified as to her GI impairments and that diagnostic testing, her medication, and the opinion of Taryn Silverstein, D.O. document the impairments.

(*See id.*at 21-22 (citations omitted)).  Plaintiff contends that despite this evidence, the ALJ never evaluated the severity of this impairment.  (*Id.* at 22 (citations omitted)).

Third, Plaintiff argues that "the ALJ erred in finding that [Plaintiff's] mental impairments were not medically determinable."  (*Id.* at 22 (citing Tr. at 14-15)).  In support, Plaintiff highlights that the only two medical sources of record to consider her depression determined it to be "severe and, inherently, medically determinable." (*Id.* at 22 (citing Tr. at 15, 45, 56-57)).  Plaintiff asserts that by finding her mental impairments to be not medically determinable, the ALJ erroneously substituted his own assessment of the objective findings.  (*Id.* at 22-23 (citations omitted)). Additionally, Plaintiff highlights additional evidence, not considered by the ALJ, that she appears to contend support a finding of a medically determinable mental impairment.  (*See id.* at 23 (citing Tr. at 320, 548, 1152, 1168, 1169, 1170, 1171; case citations omitted)).  Plaintiff maintains that this error cannot be harmless because an ALJ must consider the effect of a non-severe impairment but need not consider the effect of an impairment that is not medically determinable.  (*Id.* at 24 (citations omitted)).

Fourth, Plaintiff argues that "the ALJ erred in finding that [Plaintiff] had no medically determinable lumbar impairment."  (*Id.* (citing Tr. at 14)).  In support, Plaintiff highlights that despite finding that Plaintiff's allegations of herniated discs were not supported by medical imaging, the ALJ admitted that Plaintiff had medical imaging confirming three bulging lumbar discs.  (*Id.* (citing Tr. at 14, 286-87)).  Thus, Plaintiff argues that the ALJ's finding cannot be affirmed.  (*Id.*).

Fifth, Plaintiff argues that "the ALJ erred in ignoring evidence of record documenting limitations related to [Plaintiff's] combined impairments." (*Id.* at 25). In support, Plaintiff contends that the ALJ failed to consider evidence from third parties, including Plaintiff's friend Diane L. Castellanos – who completed a Third-Party Function Report in February 2016 – and an SSA employee E. Ramirez – who noted that during an interview, Plaintiff had difficulty walking and sitting for prolonged periods. (*Id.* (citing Tr. at 10-20, 194-95, 230-37)). Plaintiff maintains that "[t]he ALJ's failure to consider these third party [sic] reports, combined with additional errors in evaluating the severity of [Plaintiff's] impairments, requires remand for further consideration." (*Id.* at 25-26).

In response, Defendant argues that "[s]ubstantial evidence supports the ALJ's severe impairment finding." (*Id.* at 26). Defendant essentially contends that because the ALJ found that Plaintiff had a severe impairment at step two, the ALJ cannot have erred at that step. (*See id.* at 26-27 (citations omitted)). Additionally, Defendant asserts that "the ALJ fully considered Plaintiff's *alleged* impairments and properly found the objective evidence did not support functional limitations related to the impairments, and they were, therefore, non-severe." (*Id.* at 27 (citing Tr. at 12-15) (emphasis in original)).

As to Plaintiff's GI and mental impairments, Defendant highlights that Plaintiff did not allege disability based on either of these impairments in her application, did not testify as to any mental impairments during the administration hearings, and did not testify that her GI impairment limited her ability to perform

18

basic work functions.  (*Id.* (citing Tr. at 35-36, 197, 1202-13)).  Defendant maintains

that "a claimant's failure to allege an impairment defeats the claimant's later

contention that the ALJ did not properly consider that impairment."  (*Id.* at 27-28

(quoting *Duffy v. Comm'r of Soc. Sec.*, 736 F. App'x 834, 837-38 (11th Cir. 2018))).

Additionally, Defendant argues that "while Plaintiff's hand, mental, and

lumbar issues were noted in her medical records, there was no objective support that

would allow those issues to rise to the level of a severe impairment," citing specific

records related to Plaintiff's hand and lumbar impairments in support.  (*See id.* at 28-

29 (citing Tr. at 14, 197, 286-87, 450, 595, 866, 874, 871, 843, 1186)).  Moreover,

Defendant maintains that while Dr. Tribuiani is a podiatrist – and, therefore, not an

acceptable medical source – the ALJ properly assigned weigh to his opinion "as

another source who examined Plaintiff."  (*Id.* at 28 (citing SSR 06-3p, 71 Fed. Reg.

45593-03 (Aug. 9, 2006))).  Defendant argues that the ALJ's regulations allow him to

consider Dr. Tribuiani's opinion regarding the function of Plaintiff's hand –

including giving it greater weight than Dr. Duby's – and substantial weight supports

the ALJ's decision to do so.  (*See id.* at 30-31 (citations omitted)).

Ultimately, Defendant contends that "[t]he ALJ's decision reflects that he

properly considered all the opinions together with the other relevant evidence in

deciding Plaintiff's claim, in accordance with the regulations and rulings."  (*Id.* at 31

(citing Tr. at 17-18)).  Additionally, Defendant asserts that substantial evidence

supports the weight afforded to the opinion evidence.  (*Id.*).  Finally, Defendant

essentially contends that Plaintiff's remaining arguments ask this Court to reweigh

the evidence, which the Court cannot do.  (*See id.* at 31-32 (citations omitted)).  In

sum, Defendant essentially argues that because the ALJ fully considered all the

evidence of record, and substantial evidence supports his findings, the decision

should be affirmed.  (*See id.* (citations omitted)).

At step two, "[a]n impairment is not severe only if the abnormality is so slight

and its effect so minimal that it would clearly not be expected to interfere with the

individual's ability to work, irrespective of age, education or work experience."

*McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).  A severe impairment must

bring about at least more than a minimal reduction in a claimant's ability to work

and must last continuously for at least twelve months.  *See* 20 C.F.R. § 404.1505(a).

This inquiry "acts as a filter" so that insubstantial impairments will not be given

much weight.  *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987).  While the

standard for severity is low, the severity of an impairment "must be measured in

terms of its effect upon ability to work, and not simply in terms of deviation from

purely medical standards of bodily perfection or normality."  *McCruter v. Bowen*, 791

F.2d 1544, 1547 (11th Cir. 1986).

In the Eleventh Circuit, however, "[n]othing requires that the ALJ must

identify, at step two, all of the impairments that should be considered severe."  *Heatly*

*v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010).  Instead, the ALJ is

only required to consider a claimant's impairments in combination, whether severe

or not.  *Id.*  If any impairment or combination of impairments qualifies as "severe,"

step two is satisfied and the claim advances to step three.  *Gray v. Comm'r of Soc. Sec.*,

550 F. App'x 850, 852 (11th Cir. 2013) (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)).  Thus, the finding that any impairment is severe satisfies step two, and any failure to identify all impairments that should be severe is harmless. *Jamison*, 814 F.2d at 588; *see also Delia v. Comm'r of Soc. Sec.*, 433 F. App'x 885, 887 (11th Cir. 2011) (concluding that while substantial evidence did not support the ALJ's finding at step two that the plaintiff's mental impairments were not severe, the error was harmless because the ALJ found other severe impairments and considered the mental impairments at later steps).  "[B]eyond the second step, [however,] the ALJ must consider the entirety of the claimant's limitations, regardless of whether they are individually disabling." *Griffin v. Comm'r of Soc. Sec.*, 560 F. App'x 837, 842 (11th Cir. 2014) (internal citations omitted).

Additionally, "[t]he [RFC] is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite [her] impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1545(a).  As noted above, in determining a claimant's RFC, the ALJ must consider all of the relevant evidence of record.  *Barrio v. Comm'r of Soc. Sec.*, 394 F. App'x 635, 637 (11th Cir. 2010).  Thus, the ALJ must consider all the claimant's medically determinable impairments, even those not designated as severe.  20 C.F.R. § 404.1545(a)(2).  However, the Eleventh Circuit has consistently held that "the claimant bears the burden of proving that [s]he is disabled, and, consequently, [s]he is responsible for producing evidence in support of [her] claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

As an initial matter, the ALJ found that Plaintiff had the following severe impairments: "osteoarthritis of the feet with intermittent tendonitis/plantar fasciitis, inflammatory/rheumatoid arthritis and diabetes mellitus (20 [C.F.R. §] 404.1520(c))." (Tr. at 12). The ALJ then proceeded in the analysis through steps three and four. (*See id.* at 15-19). Accordingly, any error the ALJ made in finding a particular impairment non-severe is harmless so long as he considered the non-severe impairments in the remaining steps. *See Delia*, 433 F. App'x at 887.

Next, the Undersigned considers whether the ALJ erred in assessing Plaintiff's impairments. The Undersigned will first address the two arguments that the Undersigned finds require remand—*i.e.,* Plaintiff's second and fifth arguments. Although the Undersigned finds any ruling on the remaining arguments premature, the Undersigned addresses the remaining arguments in the event that the presiding United States District Judge disagrees with the Undersigned's analysis.

Turning to Plaintiff's specific arguments, the Undersigned finds Plaintiff's second argument – that the ALJ erred in failing to evaluate the severity of her GI impairments – persuasive. (*See* Doc. 16 at 21 (citing Tr. at 12-15)). As noted above, in determining a claimant's RFC, the ALJ must consider all of the relevant evidence of record. *Barrio*, 394 F. App'x at 637. Thus, the ALJ must consider all the claimant's medically determinable impairments, even those not designated as severe. 20 C.F.R. § 404.1545(a)(2). Upon review of the ALJ's decision, however, the Court cannot determine whether the ALJ properly considered Plaintiff's GI impairments at steps two, three, or four of the sequential analysis. (*See* Tr. at 12-19). At step two –

22

having already addressed Plaintiff's fibromyalgia, hand impairments, and lumbar impairments – the ALJ noted that "with regard to any other alleged symptoms that do not correspond to" those previously discussed in step two, "a medically determinable impairment may not be established solely on the basis of a claimant's allegations regarding symptoms." (*Id.* at 14). Then, the ALJ determined that Plaintiff does not have a medically determinable mental impairment. (*Id.*). The ALJ, however, did not explicitly address Plaintiff's alleged GI impairments. (*See id.* at 14-15). Thus, the Court cannot determine whether the ALJ intended to find the GI impairment to be not medically determinable or merely non-severe. In either case, the Undersigned finds that, without more, the Court does not have the ability to meaningfully review the ALJ's analysis of Plaintiff's GI impairments at step two.

A review of the full decision likewise leaves the Court unable to review meaningfully the ALJ's determination of Plaintiff's GI impairments. While the ALJ began step four by noting that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 [C.F.R. §] 404.1529 and SSR 16-3p," (*id.* at 16), a closer review of the opinion shows that the ALJ failed to address adequately Plaintiff's GI symptoms, (*id.* at 16-19). The ALJ's only mention of the impairment was a brief acknowledgment that Plaintiff "has been described as having gastroparesis, but she has reported only intermittent symptoms that have also been attributed to irritable bowel syndrome." (*Id.* at 18). However, the Eleventh Circuit has found that a brief mention of an impairment in a

biographical manner or as part of a summary of the medical examination related to the other limitations is insufficient to constitute a consideration of the impairment. *See Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1269 (11th Cir. 2019). Because the ALJ otherwise failed to discuss the impairments in any manner sufficient to allow for meaningful judicial review, the Undersigned finds that the Court cannot determine whether the ALJ considered Plaintiff's GI impairments. *See id.*

Moreover, the Undersigned is not persuaded by Defendant's argument that because Plaintiff failed to allege the impairment in her application, she cannot now argue that the ALJ did not properly consider it. (*See* Doc. 16 at 27-28). The case upon which Defendant relies (and its progeny) specifically addresses a situation in which Plaintiff neither asserted the impairment in the application nor raised the issue at the hearing. *See Duffy v. Comm'r of Soc. Sec.*, 736 F. App'x 834, 837-38 (11th Cir. 2018); *see also, e.g.*, *Dorene S. v. Saul*, No. 1:19-cv-05177-AJB, 2021 WL 3056852, at *13 (N.D. Ga. Mar. 29, 2021); *Muehlendyck v. Comm'r of Soc. Sec.*, No. 8:19-cv-1664-T-36AAS, 2020 WL 5627461, at *4 (M.D. Fla. Sept. 21, 2020); *Holmes v. Saul*, No. 3:18-cv-792-J-JRK, 2019 WL 4316740, at *3 (M.D. Fla. Sept. 12, 2019). In contrast, here, Plaintiff clearly raised the issue at the hearing by (1) asking the medical expert questions regarding the impairment, (Tr. at 1192-94, 1198), and (2) testifying as to the symptoms and their effect on her life, (*id.* at 1207-08). Thus, unlike the case relied upon by Defendant, Plaintiff raised the issue before the ALJ. *See Duffy*, 736 F.

App'x at 837-38.  As such, the Undersigned finds Defendant's reliance on *Duffy v. Comm'r of Soc. Sec.*, 736 F. App'x 834 (11th Cir. 2018) misplaced.

Ultimately, without the ability to review meaningfully the reasons the ALJ found that Plaintiff's GI impairments to be either not medically determinable or non-severe – or an ability to determine whether the ALJ considered them at all – the Undersigned finds that the Court cannot determine whether the ALJ complied with his duty to consider all Plaintiff's impairments, including those found to be non-severe.  Accordingly, remand is appropriate.  *See Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1269 (11th Cir. 2019) (citing *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) for the proposition that "the ALJ's 'failure . . . to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal' in its own right").

Likewise, the Undersigned finds Plaintiff's fifth argument – that "the ALJ erred in ignoring evidence of record documenting limitations related to [Plaintiff's] combined impairments," (Doc. 16 at 25) – persuasive as to Diane L. Castellanos' Third-Party Function Report, (*see* Tr. at 230-37).  In the report, Ms. Castellanos states, *inter alia*, that Plaintiff has problems with walking and sitting for long periods of time and seeing at night, that Plaintiff has to take breaks while performing various tasks, and that Plaintiff has trouble sleeping through the night.  (*Id.*).  While the ALJ included the report as an exhibit, (*see id.* at 23), the ALJ failed to discuss or otherwise specify any reasons for rejecting it, (*see id.* at 10-20).  The Eleventh Circuit has found

that an ALJ's failure to review a third-party's testimony is a reversible error.  *See Lucas v. Sullivan,* 918 F.2d 1567, 1574 (11th Cir. 1990); *see also Grier v. Colvin*, 117 F. Supp. 3d 1335, 1345 (N.D. Ala. 2015) (applying the Eleventh Circuit's holding in *Lucas*, 918 F.2d at 1574 to a Third-Party Function Report).

However, the error is harmless if the lay testimony is cumulative of other evidence in the record such that its rejection was implicit in the ALJ's decision.  *See De Olazabal v. Soc. Sec. Admin., Comm'r.*, 579 F. App'x 827, 832 (11th Cir. 2014). Here, the Undersigned cannot find that the ALJ implicitly rejected the Third-Party Function Report in light of the ALJ's proffered reasons for rejecting Dr. Duby's opinion.  The ALJ rejected Dr. Duby's opinion that Plaintiff "could stand or walk a total of four hours in an eight hour [sic] workday," giving more weight to Dr. Tribulani's opinion that Plaintiff could stand for a total of six hours in an eight-hour workday.  (*See* Tr. at 18).  In support, the ALJ cited "the record as a whole."  (*Id.*). Based on the report's consistency with Dr. Duby's opinion, had the ALJ properly considered Ms. Castellenos' report, the possibility remains that the ALJ may have found Dr. Duby's opinion to be more consistent with "the record as a whole."  (*See id.*; *see also id.* at 230-37).  As a result, the Undersigned finds that it is not clear whether this report can be considered "cumulative" in light of the conflicting evidence as to Plaintiff's ability to stand and walk for long periods of time.

Additionally, the Undersigned is not persuaded by Defendant's attempts to argue that the ALJ considered "all opinions" when determining Plaintiff's RFC.  (*See* Doc. 16 at 31).  While the ALJ summarily stated that his decision is "[b]ased upon

review of the complete record, consideration of all opinions within the record, consideration of the testimony of the claimant, and consideration of the claimant's severe and non-severe impairments," (*see* Tr. at 19), the Undersigned finds this statement insufficient.  First, the statement excludes any reference to third-party testimony.  (*See id.*).  Second, to the extent this could be considered a rejection, the Undersigned finds it insufficient.  Although it is well established that there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, the decision cannot broadly reject evidence in a way that prevents meaningful judicial review.  *See Dyer v. Barnhart,* 395 F.3d 1206, 1211 (11th Cir. 2005).  The broad rejection here, however, clearly forecloses judicial review, preventing the Court from determining whether the ALJ considered Ms. Castellano's report and, if so, whether substantial evidence supports the ALJ's decision to reject it.  (*See* Tr. at 19).  Thus, the Undersigned finds that the ALJ's decision is due to be remanded on this issue.  *See Lucas*, 918 F.2d at 1574.

As to the report of SSA employee E. Ramirez, however, the Undersigned is not persuaded by Plaintiff's argument.  Plaintiff has not persuasively argued that this observation constitutes either third-party testimony or an opinion that the ALJ was required to weigh.  (*See* Doc. 16 at 25-26).  Rather, it appears that the statement highlighted by Plaintiff is merely a notation as to an SSA employee's observation at the time of the interview.  (*See* Tr. at 194-95).  Plaintiff has not cited, and the Undersigned has not found, any court decision that extends the requirement for the ALJ to consider third-party testimony to observations made by an SSA employee.

Without more, the Undersigned finds that Plaintiff has not shown that remand is required based upon this issue.  Nevertheless, because the Undersigned recommends that the ALJ's decision be remanded on other grounds, the Undersigned recommends that on remand, the ALJ be directed to reconsider all medical evidence of record.

Because the Undersigned finds that remand is required as to the issues above, the Undersigned finds that it would be premature to address the remaining issues Plaintiff raises because those remaining issues will be impacted when the ALJ re-evaluates the medical evidence of record on remand.

Nevertheless, the Undersigned will proceed to analyze the remaining issues for the benefit of the presiding United States District Judge and the parties, in the event that the District Judge disagrees with the Undersigned's findings and recommendations above.

In that regard, the Undersigned finds Plaintiff's argument that the ALJ erred in finding that her hand impairments were not severe, (Doc. 16 at 19), unavailing because the ALJ specifically considered Plaintiff's hand impairments when determining Plaintiff's RFC, (Tr. at 16, 17, 19).  Because the ALJ found that Plaintiff had at least one severe impairment and specifically considered Plaintiff's hand impairments in the remaining steps, any error on the part of the ALJ was harmless. *See Delia*, 433 F. App'x at 887 (concluding the ALJ's error in finding the plaintiff's mental impairments were not severe was harmless because the ALJ found other

28

severe impairments and considered the mental impairments at later steps).  Thus, the Undersigned finds that this alleged error does not require remand.

Likewise, the Undersigned is not persuaded by Plaintiff's argument that "the ALJ erred in finding that [Plaintiff's] mental impairments were not medically determinable."  (Doc. 16 at 22).  As an initial matter, the Undersigned finds that Plaintiff is precluded from arguing that the ALJ erred in finding Plaintiff's mental impairments to be not medically determinable.  As the ALJ noted, Plaintiff "did not allege disability due to any mental health diagnosis."  (Tr. at 14 (citing Tr. at 197)).  Likewise, upon review, the Undersigned finds that Plaintiff failed to either allege her mental impairments as a basis of disability on her application, (*see id*. at 197), or at the hearing, (*see id*. at 1174-1221).  Plaintiff's failure to allege her mental impairments as a basis of disability on her application or at the hearing precludes her from now arguing that the ALJ erred in finding it to be not medically determinable.  *See Duffy v. Comm'r of Soc. Sec.*, 736 F. App'x 834, 837-38 (11th Cir. 2018); *see also, e.g.*, *Dorene S. v. Saul*, No. 1:19-cv-05177-AJB, 2021 WL 3056852, at *13 (N.D. Ga. Mar. 29, 2021); *Muehlendyck v. Comm'r of Soc. Sec.*, No. 8:19-cv-1664-T-36AAS, 2020 WL 5627461, at *4 (M.D. Fla. Sept. 21, 2020); *Holmes v. Saul*, No. 3:18-cv-792-J-JRK, 2019 WL 4316740, at *3 (M.D. Fla. Sept. 12, 2019).

Even if Plaintiff were not precluded from raising this argument, the argument fails on its merits.  The ALJ specifically discussed the pertinent medical reports:

> In July 2015, the claimant reported that she was under a lot of stress at work.  Her primary care provider, Laura Jones, MD observed that she had normal mood and affect ([Tr. at

326]).  In June 2016, Dr. Jones again noted complaints of
stress, but she observed normal affect ([Tr. at 537]).  In June
2016, Steven Paletsky, MD observed the claimant to present
with a normal mood/affect ([Tr. at 710]).  In 2017, Dr.
Bustillo reported that the claimant did not appear nervous
or anxious, observing normal mood, affect, judgment,
thought and behavior ([Tr. at 843, 848, 864-95]).  In June
2018, the claimant reported stress in the context of being
laid off from work ([Tr. at 857]).  In July 2018, Maria
Gutierrez, MD observed that the claimant presented with
no evidence of anxiety or depression ([Tr. at 1013-14].  She
noted the same in October 2018 ([Tr. at 1009]).  In 2019, the
claimant has no mental health diagnosis within her Past
Medical History ([Tr. at 1164, 1166, 1168, 1170]).

(Tr. at 14-15).  Additionally, the ALJ noted that "the record does [not] show that the

claimant has sought treatment from a mental health specialist or that she has had any

need for urgent or ongoing care." (*Id.* at 15).[5]  Finally, the ALJ specifically noted the

opinions of State agency consultants Rodolfo Buigas, Ph.D. and Heath Bradely,

Ph.D., who found Plaintiff to have a "mild limitation in concentration, persistence,

or pace but no 'severe' mental impairment," but the ALJ determine that "the record

does not support even a mild limitation."  (*Id.* at 15 (citing Tr. at 52-63)).  In light of

this, the Undersigned finds that the ALJ considered Plaintiff's alleged mental

impairments and found that they were not medically determinable, citing medical

evidence of record in support.  To the extent Plaintiff cites additional information

that she argues supports a showing of a mental impairment, (*see* Doc. 16 at 23), the

---

[5]  The ALJ appears to have unintentionally omitted the word "not" in the sentence.
(Tr. at 15).  Given the grammatical structure of the sentence, the lack of any record
citation, and the fact that Plaintiff does not cite a record in which she sought mental
health treatment, the Undersigned finds this to be a typographical error.

Undersigned finds that Plaintiff's argument essentially requests the Court to reweigh evidence, which the Court cannot do, *see Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

Moreover, even if the ALJ erred by finding that the impairment was not medically determinable, Plaintiff has not asserted any additional limitations that should be imposed in light of any alleged mental impairment.  (*See* Doc. 16 at 22). The burden remains with Plaintiff to show that an impairment causes work limitations beyond those specifically considered by the ALJ.  In articulating no additional limitation that Plaintiff asserts should have been imposed, Plaintiff failed to meet her burden to show she is disabled.  *See Ellison*, 355 F.3d at 1276; *see also Hutchinson v. Astrue*, 408 F. App'x 324, 326 (11th Cir. 2011) (stating that "proof of the mere existence of impairments does not prove the extent to which they limit a claimant's ability to work").  Thus, Plaintiff has not shown that remand is warranted on this issue.

Finally, Plaintiff maintains that "the ALJ erred in finding that [Plaintiff] had no medically determinable lumbar impairment."  (Doc. 16 at 24).  The Undersigned disagrees.  The ALJ considered Plaintiff's alleged lumbar impairment but found that there was no medical imaging to support it.  (Tr. at 14).  In so doing, the ALJ directly addressed the MRI study on which Plaintiff relies:  "In April 2015, an MRI of the claimant's lumbar spine showed no disc herniation.  Mild degenerative changes, with disc bulges at three levels, were noted, 'without significant central stenosis or foraminal narrowing.'"  (*Id.* (citing Tr. at 286-87)).  Upon review, the

31

Undersigned finds that substantial evidence supports the ALJ's summary of the MRI findings.  (*See id*. at 286-87).  In light of the ALJ's explicit and accurate consideration of the MRI, the Undersigned finds Plaintiff's reference to it unpersuasive.  Likewise, to the extent Plaintiff attempts to assert that because the MRI shows "disc bulges at three levels" the ALJ's finding must lack merit, (*see* Doc. 16 at 24), the Undersigned finds that Plaintiff's argument essentially requests the Court to reweigh evidence explicitly considered by the ALJ, which the Court cannot do, *see Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).  Plaintiff cites no other record bolstering her alleged lumbar impairments.  (*See* Doc. 16 at 24).  In light of this, the Undersigned finds that the ALJ's decision is due to be affirmed on this issue.

### C.    Whether the ALJ Erred in Evaluating Plaintiff's Past Relevant Work.

Plaintiff also contends that "[r]emand is required because the ALJ's step four finding is fatally flawed" and he made no alternative findings.  (Doc. 16 at 14).  In support, Plaintiff highlights that the ALJ determined that Plaintiff was not disabled because she could perform her past relevant work as either a bookkeeper or a medical records clerk.  (*Id.* (citing Tr. at 19)).

As to the position of bookkeeper, Plaintiff maintains that because she performed this position more than fifteen years prior to the relevant time period, it cannot constitute past relevant work.  (*See id.* at 14-15 (citations omitted)).

As to the position of medical records clerk, Plaintiff highlights that the VE testified that positions like those Plaintiff held require certification and that the VE's

testimony is consistent with Plaintiff's.  (*Id.* at 15 (citing Tr. at 1210-11, 1220)).

Plaintiff maintains that "[i]t uncontested that [Plaintiff] did not possess the required

certification to perform her past relevant work as a medical records clerk as it is

generally performed or as she actually performed it."  (*Id.* (citing Tr. at 1210)).  Thus,

Plaintiff contends that she cannot perform her past relevant work and remand is,

therefore, required.  (*Id.*).

In response, Defendant argues that "the ALJ utilized the testimony of the

vocational expert to find that Plaintiff could perform her past relevant work as a

medical records clerk as that position is generally performed in the national

economy."  (*Id.* at 16 (citing Tr. at 19-20, 1214-16)).  Further, Defendant contends

that Plaintiff's argument is both factually and legally inaccurate.  (*See id.* at 17).

First, Defendant maintains that "the premise of Plaintiff's argument is factually

inaccurate" because the VE never testified that a certification is required but rather

that it would help an individual obtain a job.  (*Id.* at 17 (citing Tr. at 1219)).

Additionally, Defendant highlights that "Plaintiff testified that while her co-workers

had certification, she was able to obtain and perform the job without this

certification."  (*Id.* (citing Tr. at 1210-11)).  Second, Defendant asserts that Plaintiff's

argument is legally inaccurate because whether "a claimant can obtain a position is

not a relevant consideration if the claimant could otherwise meet the mental and

physical demands of a position."  (*See id.* at 17 (citing 20 C.F.R. § 404.1566(c))).

Thus, Defendant maintains that even if the hiring practice for the position required a

certification, this would not be a relevant consideration for the ALJ because Plaintiff could meet the mental and physical demands of the position.  (*Id.*).

Additionally, Defendant concedes that Plaintiff's past work as a bookkeeper cannot constitute past relevant work but argues that any error is harmless in light of the finding that Plaintiff could perform the past relevant work as a medical records clerk.  (*Id.* at 16 n.2).

At the fourth step of the sequential evaluation process, the ALJ must determine whether the claimant can perform her past relevant work.  *See* 20 C.F.R. § 404.1520(a)(iv).  "To support a conclusion that the claimant is able to return to [her] past relevant work, the ALJ must consider all the duties of that work and evaluate the claimant's ability to perform them in spite of [her] impairments."  *Colon ex rel. Colon v. Comm'r of Soc. Sec.*, 411 F. App'x 236, 239 (11th Cir. 2011) (citing *Lucas v. Sullivan*, 918 F.2d 1567, 1574 n.3 (11th Cir. 1990)).  At this step, however, "[t]he burden is on the claimant to show that [s]he can no longer perform [her] past relevant work as [s]he actually performed it, and cannot perform work of that same kind."  *Id.* at 239 (citing *Jackson v. Bowen*, 801 F.2d 1291, 1293-94 (11th Cir. 1986)).  Thus, an ALJ may find a claimant not disabled if she can perform her previous work as she actually performed it or if she can perform the job as it is generally performed in the national economy.  *See* SSR 82-61.

The regulations also state that:

> If we find that you have the residual functional capacity to
> do your past relevant work, we will determine that you can
> still do your past work and are not disabled.  We will not

> consider your vocational factors of age, education, and
> work experience or whether your past relevant work exists
> in significant numbers in the national economy.

20 C.F.R. § 404.1560(b)(3).

Here, the Undersigned finds Defendant's factual argument persuasive.

Specifically, a review of the September 2019 hearing shows that a certification is not

required for the medical record clerk position.  (*See* Tr. at 1218-20).  When

questioned by Plaintiff's counsel about the position of medical record clerk, the VE

clarified that the position was "the medical coding job that [Plaintiff] described."  (*Id.*

at 1218-19).  As to whether the job generally required a certification, the following

exchange occurred:

> Q:   And you heard her testimony about the need for like
> a certification.   Is that generally accurate to be
> required to do that job, that you have a certification
> in medical coding?
>
> A:   It's not something that is a requirement for most of
> those types of jobs, but it's certainly something that
> would be helpful in terms of being more competitive
> in employment.   There's different types of medical
> record-type positions.   Some of them involving more
> work with, in terms of sensitive documents, or more
> auditing, administration.
>
> So this type of medical record clerk doesn't involve
> those levels of statistical or analysis or data analysis
> of other types, which would be more typical for
> someone with high level credential, although those
> with medical records are certainly – as is the one
> performed by the claimant, you have profession
> credentials such as the one that the claimant stressed
> [PHONETIC].

> Q:   Okay.  And, again, I mean with her description of the job, she indicated that in the job where she worked, the other employees in this similar position did have that certification.  So, I mean, would it be fair to say that in this position, typically, that she had that, that is something that's required in her past work?

> A:   Yes, as I indicated.

(*Id.* at 1219-20).  Upon review, while it is unclear whether Plaintiff's particular prior position would require a certification, it is clear that a certification is not required for all medical record clerk positions.  (*Id.*).  To that end, the VE specifically testified that a certification is not even needed for *most* medical records clerk positions.  (*Id.* at 1219).  Importantly, the ALJ found that Plaintiff could perform the position as generally performed.  (*Id.* at 20).  Thus, even assuming (without finding) that Plaintiff's particular position required a certification, the Undersigned finds that the VE's testimony provides substantial evidence that the position generally does not require a certification.  (*See id.* at 1219).  Such a finding is bolstered by the fact that the DOT for the position does not state that a certification is required, *see* 245.362-010 Medical-record Clerk, 1991 WL 672269, and Plaintiff herself testified that she was capable of performing the work without a certification, (*see* Tr. at 1210).  In light of this, the Undersigned finds that the ALJ did not err in determining that Plaintiff could perform her past relevant work as a medical records clerk notwithstanding her lack of a certification.

Additionally, the Undersigned finds that while Defendant's reliance on 20 C.F.R. § 404.1566 is misplaced, the essence of Defendant's legal argument is

persuasive.  (*See* Doc. 16 at 17-18).  As an initial matter, 20 C.F.R. § 404.1566 applies when the ALJ is considering whether work exists in significant numbers in the national economy.  *See* 20 C.F.R. § 404.1566.  Because the ALJ here found that Plaintiff could perform her past relevant work, the ALJ did not have to consider whether work existed in significant numbers.  *See* 20 C.F.R. § 404.1560(b)(3) (noting that if the ALJ determines that a claimant can perform her past relevant work, the ALJ will "not consider . . . whether [the claimant's] past relevant work exists in significant numbers in the national economy").  Thus, 20 C.F.R. § 404.1566 is inapplicable.

Nevertheless, the general proposition asserted by Defendant is persuasive under the pertinent regulation.  *See* 20 C.F.R. § 404.1560(b)(3).  As noted above, if the ALJ determines that a claimant can perform her past relevant work, the ALJ will "not consider [the claimant's] vocational factors of age, education, and work experience or whether [her] past relevant work exists in significant numbers in the national economy."  *Id.*  Although the parties did not cite, and the Undersigned has not found, any case law by or within the Eleventh Circuit interpreting this regulation in the context of certifications, jurists outside the Eleventh Circuit have found similar arguments persuasive.

For example, in *Landowske v. Berryhill*, No. 1:16-cv-00154-REB, 2017 WL 4341844, at *8 (D. Idaho Sept. 29, 2017), the Court considered a plaintiff's argument that "gaining the credentials to work in a career field [as a Clinical Counselor] in which he burned out due to the emotionally taxing nature of the career, and

maintaining those credentials to a licensing standard, is an unreasonable expectation." *Landowske*, 2017 WL 4341844, at *8. The Court rejected this argument, finding that it "misapprehends the nature of the inquiry into past relevant work" because while the physical and mental demands of a position are considered when determining whether a plaintiff can perform past relevant work, education and work experience are not. *Id.* Additionally, the Court highlighted that the DOT for the pertinent position did not state that a license was a prerequisite of the position of Clinical Counselor and that the plaintiff previously held that position. *Id.* In light of this, the Court found that any assertion that a particular position in Idaho would include licensure requirements was irrelevant to the ALJ's finding that the plaintiff could perform his past relevant work, within the framework offered by the DOT. *Id.*

As in *Landowske*, the ALJ here was not required to consider Plaintiff's work experience or education. *See* 20 C.F.R. § 404.1560(b)(3). Rather, the ALJ merely needed to consider whether Plaintiff could perform her past relevant work as actually or generally performed based on her mental and physical limitations imposed by the RFC. *See id.* Importantly, the DOT does not state that any certification is required, *see* 245.362-010 Medical-record Clerk, 1991 WL 672269, and the VE testified that a certification is not required for all positions, (*see* Tr. at 1290). Relying on VE testimony, (*see id.* at 1214-16), the ALJ found that Plaintiff could perform her past relevant work as a medical records clerk as generally performed, (*id.* at 19-20). Plaintiff has identified no limitation in her RFC that would prevent her from

performing the work of medical records clerk as generally performed.  (*See* Doc. 16 at 14-15).  As a result, the Undersigned finds that the ALJ did not err in finding that Plaintiff could perform the position because the position of medical records clerk does not require any work precluded by Plaintiff's RFC.  *See* 20 C.F.R. § 404.1560(b)(3) ("If we find that you have the [RFC] to do your past relevant work, we will determine that you can still do your past work and are not disabled.").[6]

As a final matter, because the Undersigned finds that the ALJ did not err in finding that Plaintiff could perform her past relevant work as a medical records clerk, the ALJ's error in finding that she could perform the position of bookkeeper, (DOT # 254.362-010) – which cannot constitute past relevant work – does not require remand.  *See Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877 (11th Cir. 2013) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) and concluding that an error is harmless if a correct application of the regulations would not contradict the ALJ's ultimate findings).

Accordingly, the Undersigned finds that the ALJ's decision is due to be affirmed on this issue.

---

[6] As noted *supra*, the Undersigned recommends that this action be remanded to the Commissioner with instructions to re-evaluate the medical evidence of record, which may impact the Plaintiff's RFC.  The statement above concerning the Plaintiff's RFC is offered in the alternative if the presiding United States District Judge finds that remand is not required for the reasons the Undersigned recommends.

**VI.**     **Conclusion**

Upon consideration of the parties' submissions and the administrative record, the Undersigned finds that the ALJ's decision is due to be remanded. Accordingly, the Undersigned **RESPECTFULLY RECOMMENDS** that:

1.     The decision of the Commissioner be **REVERSED AND REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g).

2.     The Commissioner be instructed on remand to do the following:

(1)     Fully comply with HALLEX I-2-6-70(b), in the event a medical examiner is used; (2) properly consider Plaintiff's GI impairments; (3) properly consider the third-party evidence; and (4) re-evaluate all medical evidence of record.

3.     The Court:  (1) suspend application of Local Rule 7.01 in this action; (2) instruct Plaintiff that a motion for fees and costs must be filed as a single motion requesting a determination of both entitlement and amount; and (3) instruct Plaintiff that if she prevails on remand, Plaintiff must comply with the November 14, 2012 Order (Doc. 1) in Case Number 6:12-mc-124-Orl-22.

4.     The Clerk of Court be directed to enter judgment accordingly, to terminate any pending motions and deadlines, and to close the case.

**RESPECTFULLY RECOMMENDED** in Chambers in Ft. Myers, Florida on November 5, 2021.

_____
Mac R. McCoy
United States Magistrate Judge

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.

Copies furnished to:

Counsel of Record
Unrepresented Parties